FILED

03/04/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 9, 2022

## STATE OF TENNESSEE v. KEINESA RENEE KYSHAY LILLARD

**Appeal from the Criminal Court for Davidson County**
**No. 2018-C-1845    Mark J. Fishburn, Judge**

_____

### No. M2020-01569-CCA-R3-CD

_____

A Davidson County grand jury indicted the defendant, Keinesa Renee Kyshay Lillard, for one count of attempted first-degree murder, one count of employing a firearm during the commission of a dangerous felony, one count of especially aggravated robbery, one count of evading arrest by use of a motor vehicle involving risk of death or serious bodily injury to others, and four counts of simple possession of a controlled substance.[1] Following trial, a jury convicted the defendant of attempted second-degree murder (count one) and employing a firearm during the commission of a dangerous felony (count two), for which she received an effective sentence of thirty-two years in confinement at 100 percent. On appeal, the defendant argues the evidence presented at trial was insufficient to support her conviction for attempted second-degree murder, the trial court erred in failing to instruct the jury on the lesser-included offense of misdemeanor reckless endangerment, and her sentence was excessive. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court and remand for the execution of a amended judgment for the employing a firearm during the commission of a dangerous felony conviction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded

J. ROSS DYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT H. MONTGOMERY, JR., JJ., joined.

---

[1] On the first day of trial, the defendant pled guilty before the jury to one count of especially aggravated robbery (count three), one count of evading arrest by use of a motor vehicle involving risk of death or serious bodily injury to others (count four), and four counts of simple possession of a controlled substance (counts five, six, seven, and eight).

Martesha L. Johnson, District Public Defender; Emma Rae Tennent (on appeal), Kyle Morris and Mary Ruth Pate (at trial), Assistant District Public Defenders, for the appellant, Keinesa Renee Kyshay Lillard.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On April 25, 2018, the victim, James Counter, was leaving Mas Tacos in East Nashville at approximately 1:30 p.m. The victim entered his car, which was parked on the street outside of the restaurant, and heard a "metallic tap" on his driver's window. He turned to see the defendant pointing a silver gun at him. The defendant waved the gun to the right, and the victim assumed the defendant wanted him to move to the passenger seat. However, he decided to exit the vehicle and removed the money from his wallet, which totaled approximately $490. He gave the money to the defendant, but she indicated that she also wanted the victim's wallet. The victim extended his arms and asked if the defendant needed to take his wallet but denied lunging at the defendant or trying to grab her. Within a matter of seconds, the defendant, who did not speak throughout the exchange, shot the victim at point-blank range in the chest.

Matthew Reed had just finished eating at Mas Tacos and was leaving the restaurant in his truck when he saw a silver Dodge parked in the middle of the road with the passenger door open. The Dodge was parked next to another car with a man in the driver's seat and the driver's door open. The defendant exited the Dodge, and Mr. Reed saw the man and the defendant exchange money and "a glance of a handgun." At that time, the man "lunge[d] out of the car at the [the defendant]," and the defendant shot the man in the chest. Mr. Reed then saw the defendant get back in the passenger seat of the Dodge and leave the scene.

Travis Teipel and his wife, Julianna Goza, were inside Mas Tacos when the people sitting on the patio ran inside screaming about a gun. Ms. Goza "cracked the door open" and saw the victim standing in the parking lot holding his stomach. Several nurses who had been on their lunch break began attending to the victim while Mr. Teipel called 911.

Prior to entering the restaurant, Mr. Teipel and Ms. Goza had almost been hit while crossing the street by a silver Dodge Avenger with a black racing stripe on the back quarter panel. They saw the Dodge stop next to a Ford Focus and watched the defendant exit the

Dodge and approach the victim saying, "come on, get out." Because they assumed they were witnessing a drug deal, they hurried into the restaurant and did not pay attention to the interaction. However, once they saw the victim's gunshot wound, they realized that they had, in fact, witnessed a robbery.

Officer Greg Lyons with the Metro Nashville Police Department ("MNPD") responded to a shooting call and located the victim on the sidewalk next to the Mas Tacos restaurant. The victim had a gunshot wound to the chest and was being tended to by several nurses already on the scene. Officer Lyons immediately called for an ambulance, and once the victim was transported to the hospital, Officer Lyons began securing the crime scene. As he was walking down West Eastland, Officer Lyons observed fresh blood on the sidewalk and noticed a cartridge casing in the street and a black Ford Focus with Wisconsin tags and a shattered driver's side window.

Lynette Mace with the MNPD's Crime Scene Investigation Unit processed the scene, photographing and collecting all evidence. In particular, Ms. Mace collected a semi-automatic cartridge casing and a hat found in the middle of the street.

Detective Tyler Conrads with the MNPD's East Crime Suppression Unit was made aware of a shooting earlier in the day in East Nashville and given a description of a possible suspect and vehicle. At 3:30 p.m. Detective Conrads received a dispatch advising him of a silver Dodge Avenger that had been seen driving aggressively before entering a cemetery. Because the vehicle matched the description of the one used in the earlier shooting, Detective Conrads parked his unmarked vehicle at the school directly across the street from the cemetery and observed the defendant walk around her vehicle. Additional unmarked vehicles arrived to assist Detective Conrads in apprehending the defendant. However, they did not want to approach the defendant until the MNPD's helicopter, Air One, was in place in case the defendant attempted to flee.

As Detective Conrads and his team observed the defendant, she entered her vehicle and pulled out of the cemetery parking lot towards the interstate. Once Air One was in place above the defendant, Detective Brian Byrnes activated his blue lights and siren and initiated a traffic stop on the defendant's vehicle. However, the defendant did not comply and instead drove into oncoming traffic at a high rate of speed. Because of the potential danger in continuing to chase the defendant, Detectives Byrnes turned his equipment off, and the helicopter called out the defendant's location to the officers. The defendant eventually stopped her vehicle in the middle of Felicia Street, and officers blocked the streets on either side to prevent the defendant from leaving. Detectives approached the vehicle and located the defendant in the driver's seat. Upon being taken into custody, the defendant was searched and officers discovered a gram of marijuana, a small amount of cocaine, a Xanax bar, and a Percocet tab. After detaining the defendant, officers detected

- 3 -

a strong odor of marijuana emanating from the defendant's vehicle and found cocaine, marijuana, cash, and a Kel-Tec P11 9mm handgun inside the defendant's vehicle.

The victim sustained extensive injuries as a result of the shooting and underwent three surgeries to repair damage to his small intestine, stomach, adrenal gland, kidney, gallbladder, and vena cava vein as well as to remove a portion of his liver. The numerous surgeries left the victim with a twenty-inch vertical scar on his chest. Following the shooting, the victim spent fourteen days in the ICU at Vanderbilt and fifteen days in a wound care specialty hospital in Nashville as well as another five days in the care of a surgeon in his home state of Wisconsin. The victim continues to suffer numerous residual effects from the shooting, including dizziness, vertigo, loss of strength, PTSD, and anxiety.

A stipulation of fact was entered into proof which stated the following:

1. That Lisa Whitaker, an expert in firearm analysis with the Metropolitan Nashville Police Department Crime Laboratory, analyzed the 9mm cartridge casing collected from West Eastland Avenue on 4/25/18 with the 9mm Kel-Tec firearm recovered from Felicia Street on 4/25/18 from the purse of [the defendant].
2. That Ms. Whitaker concluded that the 9mm cartridge case was identified as having been fired through the Kel-Tec firearm.

The defendant declined to present evidence. Following deliberations, the jury found the defendant guilty of the lesser-included offense of attempted second-degree murder (count one) and the charged offense of employing of a firearm during the commission of a dangerous felony (count two). A sentencing hearing was held, during which the defendant was sentenced as follows:

| Count | Offense | Sentence |
|-------|---------|----------|
| Count 1 | Attempted Second-Degree Murder | 12 years at 30 percent |
| Count 2 | Employing a Firearm During the Commission of a Dangerous Felony | 7 years at 100 percent |
| Count 3 | Especially Aggravated Robbery | 25 years at 100 percent |
| Count 4 | Evading Arrest by Use of a Motor Vehicle | 4 years at 30 percent |
| Count 5 | Simple Possession of a Controlled Substance | 11 months, 29 days |
| Count 6 | Simple Possession of a Controlled Substance | 11 months, 29 days |
| Count 7 | Simple Possession of a Controlled Substance | 11 months, 29 days |
| Count 8 | Simple Possession of a Controlled Substance | 11 months, 29 days |

Counts one, three, four, five, six, seven, and eight were ordered to be served concurrently with each other but consecutive to count two, for an effective sentence of thirty-two years at 100 percent[2].

The defendant filed a timely motion for new trial, which the trial court denied. This timely appeal followed.

*Analysis*

On appeal, the defendant argues the evidence presented at trial was insufficient to support her conviction for attempted second-degree murder.[3] The defendant also contends the trial court erred in failing to instruct the jury on the lesser-included offense of misdemeanor reckless endangerment and in imposing an excessive sentence. The State contends the evidence is sufficient, there is not a factual basis to support a jury instruction for misdemeanor reckless endangerment, and the trial court properly weighed the enhancement factors and bases for partial consecutive sentences. The State also contends any error in the sentence range classification for the employing a firearm conviction has been waived.

## I. Sufficiency[4]

The defendant contends the evidence is insufficient to support her conviction for attempted second-degree murder. Specifically, the defendant argues the State failed to prove she knowingly shot the victim during the robbery. She argues the evidence, at best, supports a conviction for misdemeanor reckless endangerment. The State responds the evidence is sufficient.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn.

---

[2] The defendant's sentence for employing a firearm during the commission of a dangerous felony (count two) was statutorily required to be served consecutively to her sentence for attempted second-degree murder (count one).

[3] The defendant does not challenge her conviction for employing a firearm during the commission of a dangerous felony (count two).

[4] For the sake of clarity, we have reordered and renumbered the issues from the order they appear in the defendant's brief.

1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

"In order to convict a defendant of attempted second-degree murder, the state is required to prove that the [defendant] acted with the intent to cause the knowing killing of another, believing his conduct would cause the result without further conduct on his part." *State v. Inlow*, 52 S.W.3d 101, 104 (Tenn. Crim. App. 2000) (citing Tenn. Code Ann. §§ 39-12-101(a)(2) and 39-13-210(a)). "Whether the [defendant] 'knowingly' attempted to kill his victim is a question of fact for the jury. Intent, which can seldom be proven by direct evidence, may be deduced or inferred by the trier of fact from the character of the assault, the nature of the act and from all the circumstances of the case in evidence." *Id.* at 104-5 (citing *State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993)).

Here, the defendant argues the State failed to prove she acted "knowingly" when she shot the victim during the robbery. The evidence produced at trial, however, shows otherwise. Viewed in the light most favorable to the State, the evidence shows the victim was sitting in his car when the defendant tapped on his window with a gun and gestured for him to move over. The victim instead stepped out of the vehicle and took out his wallet. The victim handed the defendant almost $500 in cash, but the defendant indicated that she also wanted the victim's wallet. When the victim extended his arms and asked if he really needed to give her his wallet, the defendant shot the victim at point-blank range in the chest and fled the scene. From this evidence, a rational jury could reasonably find that the

defendant acted knowingly when shooting the victim. As to the defendant's contention that she should have been convicted of misdemeanor reckless endangerment, as discussed further *infra*, her actions, by her own admission, did not constitute misdemeanor reckless endangerment. Accordingly, we conclude the evidence was sufficient to support the defendant's conviction of attempted second-degree murder, and the defendant is not entitled to relief on this issue.

## II.     Lesser-Included Offense Jury Instruction

The defendant argues the trial court erred in failing to instruct the jury on misdemeanor reckless endangerment as a lesser-included offense to attempted first-degree murder. The State contends there was no factual basis to support a jury instruction for misdemeanor reckless endangerment. The record reflects that the defendant filed a specific written request for jury instructions on all lesser-included offenses of attempted first-degree murder including, attempted second-degree murder, attempted voluntary manslaughter, aggravated assault, and misdemeanor reckless endangerment. The trial court instructed the jury regarding only attempted first-degree murder, attempted second-degree murder, attempted voluntary manslaughter, and aggravated assault after ruling the evidence did not support an instruction for misdemeanor reckless endangerment.

"Whether the trial court properly instructed the jury on a certain offense is a mixed question of law and fact," which we review de novo with no presumption of correctness. *State v. Howard*, 504 S.W.3d 260, 267 (Tenn. 2016). A trial court must instruct the jury on a lesser-included offense if it "determines that any evidence as to a lesser-included offense exists that reasonable minds could accept *and* that the evidence, viewed liberally in the light most favorable to the lesser-included offense, is legally sufficient to support a conviction." *Id.* at 268; *see State v. Burns*, 6 S.W.3d 453, 469 (Tenn. 1999). "The failure to instruct the jury on lesser[-]included offenses requires a reversal for a new trial unless a reviewing court determines that the error was harmless beyond a reasonable doubt." *State v. Thomas*, 158 S.W.3d 361, 379 (Tenn. 2005) (citing *State v. Ely*, 48 S.W.3d 710, 727 (Tenn. 2001)). A harmless error determination includes a "thorough examination of the record, including the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury." *State v. Allen*, 69 S.W.3d 181, 191 (Tenn. 2002).

A person who "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury" commits the offense of misdemeanor reckless endangerment. Tenn. Code Ann. § 39-13-103(a), (b)(1). If a person does so while using a deadly weapon, the offense is a Class E felony. *Id.* (b)(2). This Court has previously recognized that misdemeanor reckless endangerment is a lesser-included offense of attempted first-degree murder. *See State v. Anterrio Chambers*, W2018-01423-CCA-R3-CD, 2019 WL 1594931, at *6 (Tenn. Crim. App. Apr. 15, 2019),

*no perm. app. filed; State v. Frederick Edward Braxton and Leonard Cardell Harris*, No. M2009-01735-CCA-R3-CD, 2001 WL 3809773, at *18 (Tenn. Crim. App. Aug. 26, 2011), *perm. app. denied* (Tenn. Jan. 10, 2012). However, felony reckless endangerment is not a lesser-included offense of attempted first-degree murder. *See State v. Joseph L. Ware*, No. M2018-01326-CCA-R3-CD, 2019 WL 5837927, at *13 (Tenn. Crim. App. Nov. 7, 2019), *no perm. app filed*.

The defendant's actions in this case, by her own admission, did not constitute misdemeanor reckless endangerment as it is undisputed the defendant used a deadly weapon to shoot the victim. *See* Tenn. Code Ann. § 39-13-103(b)(2). As there is no proof in the record the defendant committed reckless endangerment without a deadly weapon, no instruction on misdemeanor reckless endangerment was required. "Only when there is some evidence upon which reasonable minds could convict the defendant of a particular lesser offense is the court required to instruct regarding that offense." *State v. Lewis*, 978 S.W.2d 558, 565 (Tenn. Crim. App. 1997). The defendant is not entitled to relief on this issue.

## III.    Sentencing

The defendant challenges the trial court's decisions regarding the length and manner of service of her sentence. She asserts the trial court misapplied enhancement factors (1) and (6). She further argues the trial court erred in imposing a Range II sentence in count two and in imposing partial consecutive sentences. The State contends the trial court properly weighed the enhancement factors and bases for partial consecutive sentences and any error in the sentencing range for count two has been waived.

In determining an appropriate sentence, a trial court must consider the following factors:  (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." *Id.* § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, -210(c). Although the application of the factors is

advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." *Id.* § 40-35-210(e).

When an accused challenges the length and manner of service of a sentence, this Court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If a trial court misapplies an enhancement or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

## A.  Enhancement Factors

The defendant argues the trial court misapplied enhancement factors (1) and (6). Specifically, the defendant contends the trial court improperly considered the defendant's juvenile record for factor (1) and applied factor (6) to count three after recognizing that serious bodily injury was an element of the offense. The State contends the trial court properly weighed the enhancement factors.

Here, the trial court applied enhancement factors (1) the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; (2) the defendant was a leader in the commission of an offense involving two (2) or more criminal actors; (6) the personal injuries inflicted upon . . . the victim [were] particularly great; (9) the defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense; and (13) at the time the felony was committed, one (1) of the following classifications was applicable to the defendant: (C) released on probation. Tenn. Code Ann. § 40-35-114(1), (2), (6), (9), (13)(C). The trial court specified that enhancement factor (9) did not apply to the defendant's convictions for especially aggravated robbery or employing a firearm during the commission of a dangerous felony.

In considering enhancement factor (1), the trial court noted

Admittedly, they are all misdemeanors, but she's got a fairly lengthy number of misdemeanor convictions including some thefts. And I know a lot of them are driver's license charges and things of that nature, which as a general rule, the [c]ourt doesn't put much weight into. But certainly, she had some offenses, misdemeanors, as an adult.

In addition, she had a number of – she had – primarily, the thing as a juvenile was the conviction for the weapons offense. She had an assault earlier that was tied to her getting kicked out of school. That was the primary violent offense that she had in her record. But the real concern for the [c]ourt was the weapon that she had when she was basically age fifteen or sixteen.

But the point being is she – and then she's got a history of almost ten years, at least eight years, of alcohol and drug abuse.

The trial court erred in its consideration of the defendant's juvenile record, as prior juvenile offenses may not form the basis for the application of enhancement factor (1). *See State v. Adams*, 45 S.W.3d 46, 58 (Tenn. Crim. App. 2000) ("The trial court's consideration of juvenile offenses under factor (1) was improper."). However, the trial court also relied on the defendant's history of illegal drug abuse as well as a misdemeanor conviction. Because the trial court relied on other considerations in addition to the defendant's juvenile offenses, the record supports enhancement factor (1).

The trial court also applied enhancement factor (6), finding that

even though serious bodily injury is a requirement of the especially aggravated robbery, one, it is not an enhancement factor for any of the other ones. But in this case, the [c]ourt finds that, despite it being an element of the offense for aggravated – especially aggravated robbery, that it applies because the level of the bodily injury in this case goes far, far beyond what is necessary to establish serious bodily injury.

I mean, this gentleman had ninety pints of blood put into his system. I mean, the pictures speak for themselves, but there was very clear testimony on the extreme suffering and the significance of the injuries that he went through as a result of this shooting. I mean, in fact, I think – the impression is that even Vanderbilt is shocked that he's alive. So, I mean, I just think the level of his injuries are so much – go so far beyond the definition for serious bodily injury that it still applies to that particular charge even though it is an element of the offense.

- 10 -

It is well-settled that statutory enhancement factors may not be applied if they are essential elements of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). Our supreme court noted that "proof of serious bodily injury will always constitute proof of particularly great injury." *State v. Jones*, 883 S.W.2d 597, 602 (Tenn. 1994). Accordingly, our Court has held that application of enhancement factor (6) is not appropriate in cases where serious bodily injury was an element of the offense. *See id.* at 602 (aggravated assault); *State v. Nix*, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995) (especially aggravated robbery); *State v. Williamson*, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995) (vehicular assault). Therefore, because "serious bodily injury" was an element of especially aggravated robbery as charged in the present case, the trial court erred in applying enhancement factor (6) to the defendant's sentence.

Although the trial court misapplied enhancement factor (6), there is no evidence in the record to suggest the trial court gave the factor great weight. Additionally, our supreme court has explained that a trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed . . . So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." *Bise*, 380 S.W.3d at 706. In this case, enhancement factors (1), (2), (9), and (13) were applicable to the defendant's sentence. With the exception of the defendant's sentence in count two, as discussed further *infra*, our review of the record indicates the trial court imposed sentences within the applicable range after properly considering the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the parties' arguments, the nature and characteristics of the crime, the potential for rehabilitation, and the evidence of enhancement and mitigating factors. Tenn. Code Ann. §§ 40-35-103(5), -114, -210(b). The defendant is not entitled to relief on this issue.

## B.    Partial Consecutive Sentences

The defendant argues the trial court erred in imposing partial consecutive sentences.[5] Specifically, the defendant contends the trial court failed to establish that partial consecutive sentences are necessary to protect the public from further offenses. The State contends the trial court properly weighed the bases for partial consecutive sentencing.

In *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive

---

[5] The defendant's sentence in count two was statutorily required to be served consecutively to her sentence in count one. Therefore, she is only challenging the trial court's order that she serve the sentence in count two consecutively to her remaining sentences.

sentencing. *Id.* at 859. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id*. at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)).

A trial court "may order sentences to run consecutively" if it finds the defendant is "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code. Ann. § 40-35-115(b)(4); *see State v. Wilkerson*, 905 S.W.2d 933, 936 (Tenn. 1995). Before a trial court may impose consecutive sentences on the basis that a defendant is a dangerous offender, the trial court must find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences . . . reasonably relate to the severity of the offenses committed." *Wilkerson*, 905 S.W.2d at 939. Our supreme court has stated that the trial court must make specific findings about "particular facts" which show the *Wilkerson* factors apply to the defendant. *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

In imposing consecutive sentences on the basis that the defendant is a dangerous offender, the trial court articulated its reasons, as follows:

> I find that she was a dangerous offender whose behavior on this occasion indicated little or no regard for human life and no hesitation about committing the crime in which the human – risk to human life was high and that the circumstances surrounding the commission of the offense was aggravated.
>
> As I said, this occurred in broad daylight at peak lunch hour in a busy – small but busy intersection where a lot of people eat outdoors over in East Nashville. And I mean, we had several private witnesses testify that all the places were very busy on this particular day because it was such a beautiful day. I think that's why Mr. Counter ended up going there in part.
>
> I think that confinement for an extended period of time is necessary to protect society from a [d]efendant who is unwilling or unable – I'm not sure which, but there was no efforts shown to lead a productive life or very, very little effort and that she had resorted to criminal activities in furtherance of that antisocial behavior, and she had a number of theft charges and things of this nature, and that the length of the sentence reasonable relates to the offenses for which the [d]efendant stands convicted.

- 12 -

Therefore the weapon runs consecutive to all of them was my intention. It mandatorily is consecutive to the attempted second[-]degree murder, but that doesn't prevent it from being required to be served consecutive to all of them.

Also, although much more minor, she was on probation at the time. But again, it was unsupervised probation for a misdemeanor offense. But technically, that applies. And to give a lesser sentence would depreciate the overall seriousness of the offenses.

In determining whether to require the defendant to serve her sentences consecutively, the trial court properly considered the facts and evidence of the case and the defendant's criminal history. The trial court first determined the defendant had little to no regard for human life, not only for the life of the victim, but also for the lives of the many people eating outdoors at the nearby restaurant. *See* Tenn. Code Ann. § 40-35-115 (b)(4). As a result, the trial court determined the defendant was a dangerous offender.

The trial court then proceeded to consider the *Wilkerson* factors. First, the trial court determined an extended sentence was necessary to protect the public from further criminal conduct by the defendant. *Wilkerson*, 905 S.W.2d at 939. In support of this decision, the trial court considered the defendant's criminal history and her convictions in the present case. The trial court explained the defendant had shown "no effort [] to lead a productive life . . . and that she had resorted to criminal activities in furtherance of that antisocial behavior." However, while the trial court stated on the record that the length of the defendant's sentence reasonably related to her offenses, it failed to state the specific facts it found to satisfy its conclusion. *See State v. Scott M. Craig*, No. E2001-01528-CCA-R3-CD, 2002 WL 1972892, at *8 (Tenn. Crim. App. Aug. 27, 2002), *no perm. app. filed* ("A mere statement that confinement is necessary to protect society and that the severity of the sentence is reasonably related to the convicted offenses, without more, is insufficient to justify consecutive sentences."); *Wilkerson*, 905 S.W.3d at 938 (holding the trial court must make "*specific findings* regarding the severity of the offenses and the necessity to protect society before ordering consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(4)") (emphasis added). Because the trial court failed to make the required findings regarding factor (4), this factor does not support consecutive sentencing. *Pollard*, 432 S.W.3d at 869 ("[W]hen trial courts fail to include the two additional findings before classifying a defendant as a dangerous offender, they have failed to adequately provide reasons on the record to support the imposition of consecutive sentences.").

However, the trial court also found the defendant was being sentenced for an offense committed while on probation, an additional basis for imposing consecutive sentences. *See*

- 13 -

Tenn. Code Ann. § 40-35-115(b)(6); *Pollard*, 423 S.W.3d at 862 ("Any one of these grounds is a sufficient basis for the imposition of consecutive sentencing.") (citing *Dickson*, 413 S.W.3d at 748). Accordingly, the trial court did not abuse its discretion by imposing consecutive sentences, and the defendant is not entitled to relief on this issue.

**C.     Employing of a Firearm During the Commission of Dangerous Felony Sentence (Count Two)**

The defendant contends the trial court erred in sentencing her as a Range II offender to seven years for employing a firearm during the commission of a dangerous felony. Although the trial court announced at the sentencing hearing that the parties agreed the defendant was a Range I offender, the trial court later sentenced the defendant as a Range II offender for count two. The State contends the defendant has waived this issue for failing to object at the sentencing hearing. The defendant filed a reply brief requesting relief under the plain error doctrine.

Although we acknowledge the defendant failed to object when the trial court sentenced her as a Range II offender for employing a firearm during the commission of a dangerous felony, it is clear the trial court erred in imposing a seven-year sentence. The defendant's sentencing range for a Class C felony was three to six years, and she did not have any prior felonies. *See* Tenn. Code Ann. §§ 40-35-112(a)(3). Therefore, by statute she should have received a mandatory minimum six-year sentence. *See* Tenn. Code Ann. § 39-17-1324(h)(1). Accordingly, we remand for entry of an amended judgment form for count two.

*Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court and remand for an amended judgment pursuant to this opinion.

_____
J. ROSS DYER, JUDGE

- 14 -